# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
May 22, 2002 Session

## STEVEN CASE v. SHELBY COUNTY CIVIL SERVICE MERIT BOARD, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
No. CH-00-1886-3     D. J. Alissandratos, Chancellor

---

### No. W2001-02058-COA-R3-CV - Filed July 19, 2002

---

Petitioner was a classified Shelby County employee who was terminated following a hearing before the County's Civil Service Merit Board. Petitioner appealed the Board's decision to chancery court, which found that Petitioner's own statements at his pretermination hearing constituted sufficient evidence to sustain the Board's action. The chancellor accordingly affirmed the decision of the Board. Petitioner appeals the chancellor's ruling, alleging he was deprived of due process and that there was no substantial evidence to support the Board's determination. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Mark Allen, Memphis, Tennessee, for the appellant, Steven Case.

Martin Zummach, Germantown, Tennessee, for the appellee, Shelby County Civil Service Merit Board and Shelby County Government.

### OPINION

Mr. Case was employed as an electrical inspector for the Memphis and Shelby County Office of Construction Code Enforcement (the County), a position he had held for 16 years. As a classified county employee, his terms of employment were governed by the Civil Service Merit Act, 1971 Tenn. Priv. Acts ch. 110 ("the Merit Act"). The Merit Act governs, *inter alia*, disciplinary procedures for classified county employees, and provides that employees governed by the Act are not employees at will, but may be terminated only for just cause.

On September 7, 1999, Mr. Peter Schultz, Administrator Construction Code Enforcement, notified Mr. Case by letter of the possibility that disciplinary action would be taken against him as a result of charges of willful disregard of lawful orders, misconduct while on duty, unsatisfactory work, gross negligence, and failure to carry out instructions. The charge of

misconduct was largely based on an August incident of alleged aggressive behavior toward a supervisor, Mr. Joe Hales, in connection with a disciplinary report prepared by Mr. Hales against Mr. Case. These charges were based on complaints made by Mr. Hales and two other supervisors, Michael Crossnine and Mike Grogan. Mr. Schultz's letter included a description of the charges and the disciplinary actions being considered. It provided Mr. Case with an opportunity to refute the charges at a pretermination meeting and notified him that a representative could accompany him to the meeting.

A pretermination meeting, known as a Loudermill hearing, was held on September 29, 1999.[1] The hearing was attended by Ms. Doris Alston, Deputy Administrator of Code Enforcement, and Mr. Lou Albonetti, Chief Electrical Inspector, in addition to Mr. Case and Mr. Schultz. Mr. Case's representative at the hearing was Mr. Jerry Smith, who was permitted to observe and take notes, but not to otherwise participate. Mr. Case was advised that the purpose of the hearing was to provide him with an opportunity to respond to the accusations against him. The Loudermill hearing lasted approximately 90 minutes. Mr. Case presented his account of the incident giving rise to accusations of aggressive behavior toward a supervisor, as well as explanations concerning allegations of unsatisfactory work, disregard of orders and failure to carry out instructions. In short, Mr. Case was afforded the opportunity to fully present "his side of the story," although he was not permitted to confront his supervisors directly.

On September 24, Mr. Case was notified by Mr. Schultz by letter that his employment was being terminated based on the findings of the Loudermill committee regarding willful disregard of lawful orders, acts of misconduct while on duty, unsatisfactory work, and intentional failure to carry out instructions. Mr. Schultz also advised Mr. Case that he had a right to appeal his termination to the Shelby County Civil Service Merit Board (the Board) within seven days.[2]

Mr. Case appealed to the Board, which held a hearing on June 29, 2000. The County's evidence at the Board hearing consisted of a transcript and summary of the Loudermill hearing, documentary evidence, and testimony of Ms. Alston and Mr. Albonetti. Mr. Case objected to the admission of the Loudermill transcript and portions of Ms. Alston's testimony on the grounds of hearsay. Mr. Case argued that to admit the transcript and Ms. Alston's testimony without providing him the opportunity to confront the primary accusers constituted a denial of due process. Mr. Case did not cross-examine Ms. Alston. Mr. Case was permitted to subpoena witnesses and defense testimony was offered by five witnesses, in addition to Mr. Case. Neither

---

[1]The term "Loudermill hearing" stems from the United States Supreme Court decision in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985). The *Loudermill* Court held that a public employee who can be discharged only for cause must be given notice and an opportunity to respond to the charges against him prior to termination. *Loudermill*, 470 U.S. at 546. The sufficiency of the pretermination hearing is not an issue on appeal in this case.

[2]Any employee demoted in rank or compensation, suspended without pay for a period exceeding 10 days, or dismissed, may, within seven days after service of the order of demotion, suspension or dismissal as herein above provided, appeal to the [civil service merit] board. 1971 Tenn. Priv. Acts. ch 110 § 23.

Mr. Hales not Mr. Schultz testified before the board. Mr. Hales had suffered an incapacitating head injury and was unable to testify, and Mr. Schultz was in Alaska at the time of the hearing. Mr. Crossnine and Mr. Grogan, supervisors who were eyewitnesses to the August incident giving rise to the charge of aggressive behavior, also did not testify and apparently were not subpoenaed by either party. The Board sustained all charges.

Mr. Case filed a writ of certiorari in Shelby County Chancery Court appealing the Board's decision.[3] In his petition for certiorari, Mr. Case contended that he was "denied the right to cross-examine any of the charging witnesses against him" and that "[t]he Civil Service Merit Board's denial of [his] right to confront the witnesses against him constituted a violation of the due process provision of the Fourteenth Amendment of the United States Constitution." He submitted that the Board's decision was therefore "arbitrary, without basis in law in fact, in excess of the statutory authority of the Agency, as an abuse of discretion in violation of the due process and equal protection provisions of the United States Constitution and in violation of the law of the land provision of the Constitution of Tennessee."

The trial court heard the matter on June 19, 2001. In making his determination, the chancellor correctly noted that his review was limited to whether the decision of the board was supported by any substantial and material evidence, regardless of whether the court would have reached the same conclusion. The chancellor did not address Mr. Case's due process argument, finding that even if the due process concerns regarding the post-termination review by the Board were resolved in Mr. Case's favor, Mr. Case's own testimony at the Loudermill hearing was sufficient evidence to support a finding of just cause for dismissal by the Board. The chancellor accordingly affirmed the decision of the Board. Mr. Case now appeals to this Court, arguing that the Board's decision was arbitrary, unsupported by substantial and material evidence, made upon unlawful procedure, and made in violation of due process.

### *Issues*

The dispositive issues in this case, as we perceive them, are:

(1)     Whether the appellant has a due process right under the Fourteen Amendment to the United States Constitution to confront and cross-examine adverse witnesses in an employment termination hearing.

(2)     Whether the appellant was denied the opportunity to confront and cross-examine adverse witnesses.

(3)     Whether the decision of the Civil Service Merit Board was arbitrary, illegal, or unsupported by substantial and material evidence.

---

[3]Within 30 days following publication of the decision of the board, on any matter heard by it, either the involved employee or the appointing authority from whose order the appeal was taken may appeal the decision of the board to the circuit court or chancery court of the county. 1971Tenn. Priv. Acts ch. 110 § 24.

### *Standard of Review*

This is an appeal from the trial court's dismissal of a  common law writ of certiorari. Such a writ is available from administrative decisions where an administrative board or agency is acting in a judicial or quasi-judicial capacity. *Davison v. Carr*, 659 S.W.2d 361, 363 (Tenn. 1983).   The Tennessee code provides:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the plain judgment of the court, there is no other plain, speedy, or adequate remedy.

Tenn. Code Ann. § 27-8-101 (2000).

Review under such a writ is limited to whether the inferior board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990)).  The reviewing court does not weigh the evidence, but must uphold the board's decision if the board acted within its jurisdiction, did not act illegally or arbitrarily or fraudulently, and if there is any material evidence to support the board's findings. *Watts v. Civil Serv. Bd. of Columbia*, 606 S.W.2d 274, 276-77 (Tenn. 1980); *Davison*, 659 S.W.2d at 363.   These determinations are issue of law. *Watts,* 606 S.W.2d at 277.  Our review of the trial court's conclusions on matters of law is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App P. 13(d).

### *Due Process*

We turn first to Mr. Case's contention that his due process rights were violated because he was not afforded an opportunity to confront the witnesses against him.  This issue requires a two-part examination.  First, we must address whether due process in an employment termination hearing requires an opportunity to confront and examine witness.  Second, if due process demands such an opportunity, we must examine the record to determine whether that opportunity has been denied.

It is undisputed that Mr. Case was a classified employee in the Shelby County civil service whose terms of employment were governed by the Shelby County Civil Service Merit Act as enacted by 1971 Tenn. Priv. Act ch. 110.  The Merit Act stipulates that classified county employees may be terminated only for just cause.  1971 Tenn. Priv. Acts ch. 110 § 21.  Such employees possess a property interest in their continued employment which may not be deprived by the State without due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985).  The question which arises in this case concerns what process is therefore due.

The most fundamental element of due process is "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[N]otice and opportunity for [a] hearing appropriate to the nature of the case" must precede the "deprivation of life, liberty or property."  *Loudermill*, 470 U.S. at 541 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)).  "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews*, 424 U.S. at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

In *Mathews*, the United States Supreme Court identified three factors to be considered in determining what procedural protections are demanded in a specific situation: 1) the private interest that will be affected by the official action; 2) the probable value, if any, of additional or substitute procedural safeguards; 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Id.* at 335.  In *Loudermill*, the Court considered due process in the tenured civil service context.  The *Loudermill* Court held that the gravity of depriving a person of his employment mandated a pretermination hearing to provide the employee with an opportunity to respond to the charges against him.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985).  The pretermination hearing must afford the employee an opportunity to present his side of the story and serves as an "initial check against mistaken decisions."  *Loudermill*, 470 U.S. at 545.  The informality of the pretermination hearing, however, is balanced by a full post-termination hearing, and "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."  *Id.* at 547.

*Loudermill* and its progeny have recognized that where the pretermination hearing has been less than a full evidentiary hearing, a more formal post-termination hearing is required.  *Id.*; *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261 (1987).  The pretermination and post-termination procedures are intertwined and must be reviewed together to determine whether due process has been satisfied.  *See, e.g., Carter v. Western Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273 (6th Cir. 1985).  We accordingly must examine them in combination to determine whether the employee has been afforded the procedural safeguards mandated by the gravity of the deprivation in light of the balancing test enunciated by the Court in *Mathews*.  The right to cross-examine witnesses is not absolute in the civil context.  *Catlett v. Woodfin*, No. 00-2145, 2001 U.S. App. LEXIS 14848, at *9 (7th Cir. 2001).  Our review of the case law reveals a split among the courts regarding whether due process in this context requires that the employee be afforded an opportunity to confront and cross-examine witnesses.  *See, e.g., Garraghty v. Virginia*, 53 F.3d 1274, 1282-83 (4th Cir. 1995)(holding that although the right to confront and cross-examine witnesses is not required pretermination, it is required at the post-termination hearing); *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 901 (8th Cir. 1994) (holding post-termination hearings insufficient where employee was not given opportunity to cross-examine witnesses against him).  *But see Flath v. Garrison Pub. Sch. Dist. No. 51*, 82 F.3d 244, 247 (8th Cir. 1996); *City of North Pole v. Zabek*, 934 P.2d 1292, 1298 (Alaska 1997) (holding post-termination procedures not inadequate where no opportunity to confront or cross-examine witnesses was granted).  Other courts have held that while not required in all cases, due process demands the opportunity to confront and cross-examine "those whose word deprives a

person of his livelihood" in some circumstances. ***West v. Grand County***, 967 F.2d 362, 369 (10th Cir. 1992); ***Catlett***, 2001 U.S. App. LEXIS 14848, at \*9-10. Courts also have recognized that where the opportunity to confront and cross-examine witnesses has been granted, it is significant in determining the sufficiency of the post-termination hearing. ***See Brewster v. Board of Educ.***, 149 F.3d 971, 986 (9th Cir. 1998).

Neither the United States Supreme Court nor the highest State courts have determined whether due process requires that a civil service employee with a property interest in continued employment must be given the opportunity to confront and cross-examine adverse witnesses at some stage in the termination process. However, we believe the Supreme Court's observations on due process mandate that where the facts giving rise to an employee's termination are in dispute, or where the gravity of termination as opposed to less severe disciplinary measures is reasonably challenged, due process requires that the employee be afforded the opportunity to confront and cross-examine the witnesses against him. ***See, e.g., Cleveland Bd. of Educ. v. Loudermill***, 470 U.S. 532, 548 (1985)(citations omitted)(Marshall, J. concurring) ("[T]he employee is entitled to an opportunity to test the strength of the evidence by 'confronting and cross-examining adverse witnesses'" pretermination.); ***Brock v. Roadway Express, Inc.***, 481 U.S. 252, 264 (1987)("[C]ross-examination . . . need not be afforded at ***this*** [pretermination] stage of the proceedings.")(emphasis added)). ***See Rayder v. Grunow***, No. 01-A-01-9207-CH-00327, 1993 Tenn. App. LEXIS 261, at \*14-15 (Tenn. Ct. App. Apr. 2, 1993) (***no perm. app. filed***) (citing the U.S. Supreme Court's holding in ***Goldberg v. Kelly***, 397 U.S.254, 268 (1970), that due process requires that welfare recipients be afforded an opportunity to confront adverse witnesses before welfare rights could be deprived for the proposition that the same right would be required in the employment termination context).

This holding is supported by application of the ***Mathews*** factors. First, the private interest affected is substantial. The loss of one's means of livelihood is accentuated by the questionable circumstances of a "for cause" dismissal. Such a termination could have a considerable impact on the employee's chances for future employment. ***See Loudermill***, 470 U.S. at 543. Second, the value of the right to confront and examine one's accusers where factual elements are in dispute is implicit in our adversarial system and the deference we accord to the fact finder's determination of issues such as witness credibility and material fact. ***See, e.g., Berryhill v. Rhodes***, 21 S.W.3d 188, 190 (Tenn. 2000); ***Gaskill v. Gaskill***, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). Third, in enacting the Civil Service Merit Act, the legislature recognized a notable governmental interest in consistent civil service policies and procedures. ***See generally***, ***Shelby County Civil Serv. Merit Bd. v. Lively***, 692 S.W.2d 15 (Tenn. 1985). One of the express provisions of the system is that employees may be terminated only for cause. 1971 Tenn. Priv. Acts ch. 110 § 21. The government has a corresponding interest maintaining the integrity of the civil service system. Further, our review of the record in this case reveals that employees who challenge termination to the Civil Service Merit Board are allowed to call witnesses and to cross-examine witnesses appearing against them. The rules regarding disciplinary hearings before the Board provide that the secretary of the Board must issue subpoenas requested by the appellant, that the appellant shall be entitled to appear personally and

produce evidence in the form of exhibits and testimony, and that the Board is entitled to question a witness after examination by both parties. Thus the County already is meeting the burden of providing this safeguard.

We agree with our sister jurisdictions that have held that where the decision to terminate employment turns on determinations of issues of fact, due process requires an opportunity to confront and cross-examine witnesses. *See Bartlett v. Krause*, 551 A.2d 710 (Conn. 1988); *Ohio Assoc. of Pub. Sch. Emp. v. Lakewood City Sch. Dist. Bd. of Educ.*, 624 N.E.2d 1043 (Ohio 1994). We accordingly hold that due process mandates that a classified civil service employee whose employment may be terminated only for cause must be afforded the opportunity to confront and cross-examine the witnesses against him at the post-termination hearing where the facts giving rise to termination are in dispute or where the severity of the discipline is challenged.

We must next determine whether Mr. Case was denied that right. We find that he was not. The record of Mr. Case's hearing before the Civil Service Board reveals that Mr. Case cross-examined Mr. Albonetti and had the opportunity to cross-examine Ms. Alson, but declined to do so. The record further reveals that in addition to testifying on his own behalf, Mr. Case was given the opportunity to call as many witness as he desired and in fact called five witnesses. Mr. Case's argument that he was denied the opportunity to confront the principal accusers is without merit. Mr. Case could have subpoenaed Mr. Shultz, who made the decision to terminate his employment, but did not do so. He also could have subpoenaed Mr. Crossnine and Mr. Grogan, supervisors who witnessed the altercation between Mr. Case and Mr. Hales and whose complaints, along with Mr. Hales', provided the grounds for his termination. The Board provided Mr. Case with the opportunity to confront and examine three of the four supervisors whose complaints resulted in his termination.[4] It provided him the opportunity to confront and examine Ms. Alston, Mr. Shultz, and Mr. Albonetti, who jointly conducted the Loudermill hearing and made the decision to terminate his employment. Mr. Case must bear the responsibility for declining to take advantage of these opportunities. *See, e.g., Rayder v. Grunow*, No. 01-A-01-9207-CH-00327, 1993 Tenn. App. LEXIS 261, at *16-17 (Tenn. Ct. App. Apr. 2, 1993) (*no perm. app. filed*). Further, while Mr. Case may have assumed that the County would have called Mr. Shultz, Mr. Crossnine and Mr. Grogan as witnesses, such an assumption does not absolve him of the responsibility to subpoena those witnesses whose testimony he believes is necessary to his defense. *See id.* at *13-14.

### Decision of the Civil Service Board

Mr. Case submits that the decision by the Civil Service Merit Board to terminate his employment was illegal because the Board violated his due process rights. As noted above, we find no due process violation. Mr. Case further contends that the decision of the Board was

---

[4]As noted above, Mr. Hales was permanently incapacitated by a head injury at the time of the hearing and therefore could not appear as a witness.

unsupported by substantial and material evidence. Mr. Case's argument, as we understand it, is that the County's evidence, which consisted of the transcript of the Loudermill hearing and documentary evidence, is inadmissible as uncorroborated hearsay and, therefore, is not substantial and material evidence. We disagree.

The issue to be decided by the Board was whether there was just cause to terminate Mr. Case's employment. This Court has noted that the term just cause "rest[s] on grounds which must be fair and reasonable." *Knoxville Util. Bd. v. Burnette*, No. 03A01-9301-CH-00008, 1993 Tenn. App. LEXIS 438, at * 27 (Tenn. Ct. App. June 28, 1993) (*no perm. app. filed*) (quoting *Coghill v. Coghill Indus., Inc.*, 3 TAM-2 (E.S. Tenn App. 28 Feb. 1978)). In *Burnette***,** we observed that "'cause' is construed to mean some substantial shortcoming which renders continuance in office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and sound public opinion recognize as good cause for removal." *Id.* at *27-28 (quoting 67 C.J.S. *Officers and Public Employees* § 132). Although the burden of demonstrating cause is on the employer, the administrative board reviewing the termination must consider the record as a whole to determine whether cause exists. *Id.* at *26.

Mr. Case cites *Goodwin v. Metropolitan Board of Health***,** 656 S.W.2d 383 (Tenn. Ct. App. 1983), for the proposition that hearsay evidence that is uncorroborated by live testimony is inadmissible to demonstrate cause for dismissal. We disagree. This Court has noted that the holding in *Goodwin* was based largely on the United States Supreme Court decision in *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938), where the Court stated that "mere uncorroborated hearsay or rumor does not constitute substantial evidence." *Rayder*, 1993 Tenn. App. LEXIS 261, at *23 (quoting *Consolidated Edison Co.*, 305 U.S. at 230). In *Rayder*, we observed that the Supreme Court rejected such a complete rejection of hearsay evidence in *Richardson v. Perales*, 402 U.S. 389, 402 (1971). *Rayder*, 1993 Tenn. App. LEXIS 261, at *24. We noted that *Richardson* and the Court's subsequent holding in *Califano v. Boles*, 443 U.S. 282, 285 (1979), stood for the proposition that hearsay evidence could constitute substantial evidence when there has been an opportunity to cross-examine the source of the information. *Id.* As we stated in *Rayder*, "[t]hese decisions have now so discredited the *Consolidated Edison* dicta that courts today are much more inclined to allow administrative findings to be based on hearsay than during the period before *Richardson*." *Rayder*, at *24.

Considerations of probative value and fairness are fundamental to admissibility. *Id*. Mr. Case does not dispute the integrity of the Loudermill transcript which was offered into evidence, but argues that it is hearsay and is therefore insufficient to constitute substantial evidence. As noted above, hearsay evidence is generally admissible in administrative proceedings such as those before the Board. Further, the Loudermill transcript in this case consists primarily of Mr. Case's explanation of the circumstances giving rise to his termination. In short, the transcript tells his side of the story in his own words. Mr. Cases's own remarks led the Board to find just cause for his dismissal. Whether or not the transcript would be hearsay, it is a reliable account of Mr. Case's statements and we see nothing fundamentally unfair in its admission at the hearing before the Board. *See Tennessee v. Richardson*, No. 03C01-9503-CR-00065, 1995 Tenn. Crim.

App. Lexis 667, at *6-7 (Tenn. Crim. App. Aug. 7, 1995) (*no perm. app. filed*).

The sole duty of the chancellor reviewing a board decision is to determine whether that decision is supported by the evidence in the record. *Austin v. Shelby County*, 761 S.W.2d 298, 300 (Tenn. Ct. App. 1988). Upon review of the record in this case, we are satisfied that there is material evidence to support a finding of just cause for dismissal. We accordingly affirm the judgment below.

### *Conclusion*

We believe due process requires an opportunity to confront and cross-examine adverse witnesses where facts or the severity of discipline are disputed in a post-termination hearing before the Civil Service Merit Board. This right was not denied in the current case. We affirm the judgment below that there was substantial and material evidence to support a finding of just cause to terminate employment of Mr. Case. Judgment of the court below is affirmed. Costs of this appeal are taxed to the Appellant, Mr. Steven Case, and his surety, for which execution my issue if necessary.

_____
DAVID R. FARMER, JUDGE